OPINION
{¶ 1} On February 15, 2005, Kimble entered guilty pleas to Count one: tampering with evidence in violation of R.C.2921.12(A)(1) (B), a felony of the third degree and Count two: possession of cocaine in violation of R.C. 2925.11(A) 
(C)(4)(a), a felony of the fifth degree.[1] Kimble moved to withdraw his guilty plea on the day of sentencing. The Trumbull County Court of Common Pleas denied his request and proceeded to sentence Kimble to three years imprisonment on Count one and six months imprisonment on Count two, said sentences to run concurrent to one another. Kimble timely appeals both the denial of his motion to withdraw his plea and the sentences imposed. For the following reasons, we affirm.
 {¶ 2} Kimble assigns the following errors for our review:
 {¶ 3} "[1.] THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.
 {¶ 4} "[2.] THE TRIAL COURT'S IMPOSITION OF A SENTENCE GREATER THAN THE MINIMUM PERMITTED BY STATUTE BASED UPON FINDINGS NOT MADE BY A JURY NOR ADMITTED BY APPELLANT IS CONTRARY TO LAW AND VIOLATES APPELLANT'S RIGHT TO A TRIAL BY JURY AND DUE PROCESS, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 5} In Kimble's first assignment of error, he challenges the trial court's refusal of Kimble's motion to withdraw his prior guilty plea. We review a trial court's denial of a motion to withdraw a plea pursuant to an abuse of discretion standard.State v. Xie (1992), 62 Ohio St.3d 521, 526; see, also, Statev. Curd, 11th Dist. No. 2003-L-030, 2004-Ohio-7222, at ¶ 106. "An abuse of discretion connotes more than an error of law or judgment; instead, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable." Id. citing State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 6} Withdrawals of guilty pleas prior to sentencing should be freely and liberally granted. Xie, supra, at 526. However, there is no absolute right to withdraw a guilty plea. Id. Courts are required to conduct a hearing at which the defendant is required to articulate a reasonable and legitimate basis for the withdrawal of the plea. Id.
 {¶ 7} A trial court does not abuse its discretion in denying the withdrawal of a plea when the following occur: "(1) the trial court made certain, pursuant to Crim.R. 11, that the defendant fully understood the nature and consequences of the original plea and that the plea was entered into voluntarily; (2) the accused was represented by highly competent counsel; (3) the defendant was given an adequate hearing on his motion to withdraw his plea and was afforded the opportunity to make all arguments in support of his motion; and (4) the lower court gave the necessary consideration to defendant's motion." Curd, supra, at ¶ 107, citing State v. Peterseim (1980), 68 Ohio App.2d 211, 214.
 {¶ 8} Essentially, appellant challenges only the second prong of this analysis and raises a claim of ineffective assistance of counsel to support his first assignment of error. Effective assistance of counsel is guaranteed by the Sixth Amendment.Strickland v. Washington (1984), 466 U.S. 668. Strickland set forth a two-prong test for determining ineffective assistance of counsel, including ineffectiveness in negotiation of guilty pleas. Id. at syllabus, see, Hill v. Lockhart (1985),474 U.S. 52, 58.
 {¶ 9} First, Kimble must show that the representation of his legal counsel at the time of the plea fell below an objective standard of reasonableness. Strickland, supra, at 687. "Judicial scrutiny of counsel's performance must be highly deferential. * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, supra, at 689. There is a strong presumption that the attorney's performance was reasonable. Id. at 689.
 {¶ 10} Second, Kimble must be able to show that he was directly prejudiced as a result of the deficient performance. Therefore, in the context of the withdrawal of a guilty plea, "* * * a defendant must * * * demonstrate that there is a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Curd, supra, at ¶ 110.
 {¶ 11} Kimble first raised his motion to withdraw his prior guilty plea on the day of his sentencing hearing, July 13, 2005.[2] At the outset of the sentencing hearing, the trial court inquired whether Kimble had anything to discuss prior to the sentence. Kimble replied that he had some concern regarding the plea. Atty. Olivito, Kimble's trial counsel, explained that Kimble had reservations about the plea.
 {¶ 12} After some discussion, Atty. Olivito clarified the concern of Kimble on the record.
 {¶ 13} "I think the question he's asking in the end is that if he withdraws that motion would that then interrupt any other options for him on that particular case? Would that end any potential negotiations on that case * * *[?]" Following another discussion off the record with his client, Atty. Olivito indicated to the court that "because of the consternation and reservations" he was lodging a motion to withdraw the plea. Atty. Olivito then explained on behalf of his client that Kimble was not sure what became of the plea in the underlying criminal case when he chose to go to trial on another criminal matter that had, at one point, been at least discussed in negotiations as a package deal. Specifically, Atty. Olivito stated, "[Kimble] was waiting to see how the State would recommend the overall sentencing to the Court." Kimble then agreed, "I didn't know by me going to trial that the plea was still going to be on the table as in the one to three offer. So, * * * if I would have known that, it would have probably changed a couple different ways we approached that, but that was never stated before we went to trial by nobody."
 {¶ 14} Further explanation revealed that it was not until the day of trial on the second case that Kimble expressed his discomfort with the plea in the underlying matter.
 {¶ 15} "[H]e didn't feel that he could make a knowing, intelligent and voluntary plea in the original case, and he indicated that on the record as we were going into the second * * *." Kimble again agreed and indicated his dissatisfaction with the procedure. "Basically when we went to trial she said all deals was off the table so I included that too when she said that. So, therefore, that left me to thinking that there was no plea bargain deals for this charge, period. So, therefore, I mean, I feel that, you know, this just ain't right right now."
 {¶ 16} "* * * [I]t is well-established that a change of heart is not sufficient to serve as the basis for a motion to withdraw a plea." Curd, supra, at ¶ 114. The trial court is in a better position to evaluate the motivation for the plea and the subsequent move to withdraw the same. Xie, supra, at 525. The trial court did not find that Kimble had set forth a valid reason for the withdrawal of the plea. The court considered the timeliness, or rather the untimeliness, of Kimble's motion — on the day of sentencing. Ironically, Kimble himself acknowledged on the record that the plea was satisfactory. "I'm not unhappy with it at all," stated Kimble.
 {¶ 17} Kimble claims on appeal that his trial counsel did not represent him effectively for two reasons. First, Kimble claims Atty. Olivito allowed him to enter into a plea without any reduction in charges. For the second error, Kimble claims he was allowed to enter into a plea without a sentencing agreement in place.
 {¶ 18} We do not agree with Kimble's argument that a plea demonstrates ineffective assistance of counsel merely because it did not accomplish a reduction in charges. There are pleas across the state daily that do not involve a reduction in charges. There are many different reasons a criminal defendant may choose to enter a guilty plea that do not require a reduction in charges. In addition, we note that counsel's arguments that the trial counsel didn't "get anything" for Kimble are not accurate. Kimble certainly received a benefit. The assault on a peace officer charge was nolled.[3] The prosecution agreed not to refile that charge. Second, Kimble's plea agreement removed the threat of maximum prison terms.
 {¶ 19} Kimble argues on appeal that his trial counsel did not understand the plea agreement. The record does not support that conclusion. During the discussion of the request to withdraw the plea, Atty. Olivito expressed the concerns of his client. As evidenced above, those concerns were confusing. However, there is nothing in the record to support Kimble's appellate argument that his trial counsel did not understand the plea. The record rather supports the trial court's ultimate conclusion that faced with a definite imprisonment term and an additional prison term beyond that as a result of the guilty verdict from another criminal case, Kimble had a change of heart and attempted to withdraw the original plea.
 {¶ 20} Kimble's references to Atty. Olivito's lack of knowledge and Kimble's corresponding lack of knowledge are not supported by the record. The plea agreement in the underlying case came after the jury had been seated and the trial was scheduled to begin. Ironically, the plea came following a ruling by the trial court that the infamous videotape allegedly showing excessive force referenced so often by Kimble on appeal was not relevant to the remaining charges of tampering with evidence and possession of cocaine and therefore the same would be excluded as evidence.[4] Immediately following the exclusion of this evidence, Kimble chose to plead guilty to the indictment.
 {¶ 21} The trial court discussed the plea agreement with Kimble. Kimble acknowledged that he understood the agreement. He understood the ramifications of the agreement. He understood the rights he was giving up in exchange for the agreement. He indicated that he was satisfied with his legal counsel and that he did not believe there was anything more Atty. Olivito could have done on his behalf. He also signed a written plea agreement detailing the terms of the agreement. At no point in time were any other criminal cases mentioned as being related to the underlying offenses. Kimble's argument that both cases remained tied together in his mind and in the mind of his trial attorney is once again not supported by anything in the record. It is disingenuous for Kimble to argue that he legitimately thought that following a written plea agreement and oral plea colloquy, during which at no point in time was the other criminal case even mentioned or referenced, that such an agreement would simply be tossed out the window when he chose to go to trial on an unrelated matter.
 {¶ 22} In regards to Kimble's charge of a lack of sentencing agreement, the record reflects the opposite — there was a sentencing agreement as part of the plea. According to the express terms of the plea, a prison term of at least one but no more than three years was required as part of the plea agreement. "The underlying agreement upon which the plea is based is as follows: Defendant to undergo PSI. State and Defendant expressly agree that the Defendant will serve a prison term within the range of one (1) to three (3) years. The Court to determine actual sentence. [sic] Defendant stipulates that he has served a prior prison term and that he is not amenable to available community control sanctions."
 {¶ 23} Kimble was sentenced to serve a total imprisonment term of three years, taking into consideration the concurrent nature of the sentences imposed on counts one and two. This is consistent with the plea and sentencing agreement. Therefore, Kimble's trial counsel did secure a sentencing agreement as part of the guilty plea. And Kimble received exactly what he had bargained for — a three-year prison sentence. Based on the charges, Kimble could have received up to five years for the third-degree felony and up to one year for the fifth-degree felony. Based on a total possible six-year sentence, we cannot conclude that the trial counsel's procurement of a three-year term equates to ineffective assistance of counsel. Although it is not demonstrated here, even when counsel's advice to a defendant regarding a plea is faulty, it is not error for the trial court to deny the withdrawal request. Xie, supra, at 525. Likewise, we are not convinced by Kimble's argument that procuring an imprisonment range as opposed to a specific number of years means that the sentence was not jointly recommended. Kimble could provide no authority for this position and it is not logical. Based on the written plea agreement and the colloquy by the trial court in relation to such, Kimble knew that his prison term was either going to be one year, three years, or somewhere in between. He was not sentenced to five years. He was not sentenced to four years. He was sentenced to exactly what he bargained for and agreed to, albeit at the high end of the spectrum.
 {¶ 24} Therefore, we cannot conclude that the performance of Kimble's trial counsel fell below an objective standard of reasonableness. Furthermore, even if we were to conclude that the trial counsel's performance was ineffective, Kimble cannot meet the second prong of the Strickland test because he admitted that we was happy with the plea agreement. Kimble has failed to demonstrate any deficiencies under the Peterseim factors. Therefore, we conclude the trial court did not abuse its discretion in refusing to allow Kimble to withdraw his plea when Kimble failed to articulate a valid reason for the withdrawal and he admitted he was content with the plea.
 {¶ 25} Kimble's first assignment of error is without merit.
 {¶ 26} Kimble's second assignment of error challenges the sentence as being more-than-the-minimum sentence based on improper judicial fact-finding. Recently, the Ohio Supreme Court declared certain portions of Ohio's sentencing statutes unconstitutional. State v. Foster, 109 Ohio St.3d. 1,2006-Ohio-856. In Foster, the court held that R.C. 2929.14(B) and 2929.14(C) violate a defendant's Sixth Amendment right to a jury trial by replacing the judge as the fact-finder in lieu of the jury. Id.; see, also, Apprendi v. New Jersey (2000),530 U.S. 466; Blakely v. Washington (2004), 542 U.S. 296. The court further held that following excision of the offending statutes, the remaining statutory sentencing scheme survives.
 {¶ 27} Although Kimble lodges a Foster violation due to the nature of the sentences imposed by the trial court, agreed upon sentences are not subject to appellate review. "Once a defendant stipulates that a particular sentence is justified, the sentencing judge need not independently justify the sentence."State v. Porterfield, 106 Ohio St.3d 5, 2005-Ohio-3095, at paragraph three of the syllabus. Pursuant to R.C. 2953.08 (D)(1), "[a] sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."
 {¶ 28} The theory behind the refusal to review agreed-upon sentences remains constant, even after Foster. State v. Woods,
2d Dist. No. 05CA0063, 2006-Ohio-2325, at ¶¶ 14-15; see, also,State v. Covington, 5th Dist. No. CT2005-0038, 2006-Ohio-2700, at ¶¶ 13-14; State v. Hammond, 8th Dist. No. 86192,2006-Ohio-1570, at ¶ 14. "The General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate."Porterfield, supra, at ¶ 25.
 {¶ 29} In addition, as part of Kimble's plea agreement, he expressly stipulated that he had served a prior prison term and that he was not amenable to community control sanctions. These admissions essentially removed the onus of fact-finding from the trial court.
 {¶ 30} Kimble's second assignment of error is without merit.
 {¶ 31} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.
Donald R. Ford, P.J., concurs, Colleen M. O'Toole, J., concurs in judgment only.
[1] Kimble was originally indicted on three counts, the first count being assault on a peace officer in violation of R.C.2903.13(C)(3) and the remaining two counts listed above being counts two and three respectively. However, upon motion by the state, the trial court nolled the first count and re-numbered the charges as listed in the body of this opinion.
[2] Kimble was also being sentenced on this day for criminal case number 04-CR-525 following a conviction by a jury.
[3] Despite Kimble's repeated reference to the fact that the prosecution nolled the assault charge because it was a bad case, there is nothing in the record to support that allegation.
[4] The videotape was excluded on the grounds that it was not relevant to the remaining charges at hand. However, the record reflects that Kimble was unable to produce the original videotape or a true and accurate copy of the same.